IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ARKADIUSZ LALIK, §
 §
 Plaintiff, §
 §
VS. § NO. 4:07-CV-152-A
 §
ROADRUNNER DAWES FREIGHT §
SYSTEMS INC., d/b/a §
ROADRUNNER DAWES, §
 §
 Defendant. §

MEMORANDUM OPINION
and
ORDER

On March 6, 2008, defendant, Roadrunner Dawes Frieght Systems Inc., d/b/a Roadrunner Dawes, filed a motion for summary judgment in the above-captioned action. Plaintiff, Arkadiusz Lalik, responded on April 11, 2008. Having considered defendant's motion, plaintiff's response, the summary judgment evidence, and applicable authorities, the court concludes that defendant's motion for summary judgment should be granted.

I.

Plaintiff's Claims

Plaintiff, a long-haul truck driver who drove for defendant from 1999 to 2005, alleges that he suffered harassment, discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, and parallel provisions of Texas state law. Plaintiff claims that he suffered harassment on the basis of his national origin and sex, defendant retaliated against him when such harassment was reported, and that he was constructively

discharged.

## II.

### The Motion for Summary Judgment

Defendant maintains that plaintiff was associated with defendant as an independent contractor, rather than an employee, so Title VII does not apply. In the alternative, defendant maintains that each of plaintiff's claims fails as a matter of law.

## III.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at

256. To meet this burden, the nonmovant must "identify specific evidence in the record[] and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 (1986). See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

## IV.

### Analysis

Title VII contemplates some employment relationship between the plaintiff and defendant in a given case. See, e.g., Broussard v. L.H. Bossier, Inc., 789 F.2d 1158, 1159 (5th Cir.

1986).¹ To determine whether an employment relationship exists in the Title VII context, the court applies "a 'hybrid economic realities/common law control test.'"² Muhammad v. Dallas County Cmty. Supervision and Corrs. Dep't, 479 F.3d 377, 380 (5th Cir. 2007) (quoting Deal v. State Farm County Mut. Ins. Co., 5 F.3d 117, 118-19 (5th Cir. 1993)). "[T]he right to control is the most important factor in determining employee status." Broussard, 789 F.2d at 1160. See also Deal, 5 F.3d at 119. Evidence of control over a job includes:

> [1] ownership of equipment necessary to its performance, [2] responsibility for costs associated with operating that equipment and for such things as license fees and taxes, [3] responsibility for obtaining insurance, [4] responsibility for maintenance and operating supplies, [5] ability to influence profits, [6] length of job commitment, [7] form of payment, and [8] directions on schedules and on performing work.

Broussard, 789 F.2d at 1160. Other factors, including the intention of the parties, may also be relevant. Id. "The

---

¹Plaintiff avers that in addition to his claims under Title VII, he is asserting claims under "the parallel provisions of Texas states law . . . ." First Amended Compl. at 9. Though he never cites the applicable Texas statutes, presumably he intends to assert claims pursuant to the Texas Commission on Human Rights Act ("TCHRA"). "[T]he law governing claims under the TCHRA and Title VII is identical." Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403-04 n.2 (5th Cir. 1999)). Further, the TCHRA, like Title VII, protects employees, but not independent contractors. See, e.g., Johnson v. Scott Fetzer Co., 124 S.W.3d 257, 263 (Tex.App.--Fort Worth 2003, pet. denied). Therefore, although this opinion speaks only in terms of plaintiff's Title VII claims, the reasoning herein applies equally to all of the claims asserted by plaintiff.

²Plaintiff argues that "[t]o the extent the 5th Circuit's use of a 'hybird economic realities/common law control test' is inconsistent with the [Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 322-24 (1992)] 'multifactor common law test,' it should be disregarded." Pl.'s Resp. at 15. The two tests are not inconsistent, especially given that "the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" Id. at 324 (quoting NLRB v. United Ins. Co. of America, 390 U.S. 254, 258 (1968)).

4

economic realities component . . . focuse[s] on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." Deal, 5 F.3d at 119.

Undisputed evidence weighs in favor of the conclusion that plaintiff was an independent contractor: he owned the tractor trailer; ultimately bore the costs associated with operating it; paid all licensing fees and taxes; was responsible for maintenance; and provided insurance for the tractor trailer.[3] Further, plaintiff cited his truck insurance as a deduction on his taxes. Defendant did not withhold taxes from plaintiff's pay, and at the end of the year, he was provided with an IRS form 1099. Plaintiff did not receive any vacation pay, paid time off, retirement benefits, or social security payments from defendant, and he had a federal employer identification number.

Plaintiff's relationship with defendant lasted from 1999 to 2005, and was based on a series of short-term contracts.[4] A representative agreement, dated March 3, 2005, was titled "Independent Contractor Agreement for Long Haul Owner-Operators"

---

[3]Plaintiff argues that the fact that defendant required him to pay workers' compensation insurance and offered him medical insurance is evidence that he was an employee of defendant. These facts do not prove that defendant, rather than plaintiff, was responsible for obtaining insurance. The fact that defendant required plaintiff to pay for workers' compensation insurance could actually be evidence that plaintiff was responsible such insurance. In any event, these facts are not persuasive evidence that plaintiff was an employee.

[4]The representative agreement provides that it "shall become effective upon signing by both parties, shall remain in effect for one (1) year from date of signing and shall automatically renew for additional like periods (not to exceed a total of three (3) years) unless sooner canceled." Def.'s App. at 242.

(hereinafter, "Agreement"). Def.'s App. at 242.[5] The Agreement refers to plaintiff as "CONTRACTOR" and reiterates in several places the notion that "CONTRACTOR acknowledges and agrees that it has been engaged as an independent contractor and not as an employee." See, e.g., Def.'s App. at 251. Plaintiff signed the Agreement on behalf of "Transcar," which is identified as the name of his business.[6] The Agreement confirmed that plaintiff owned his own tractor trailer and remained responsible for operating costs including fuel, repairs, maintenance, insurance, and licensing fees. Plaintiff had the right to terminate his relationship with defendant at any time. The Agreement is strong evidence that plaintiff and defendant intended that the relationship be that of independent contractor.[7]

---

[5]Plaintiff stated in his deposition that the March 3, 2005, Agreement was substantially similar to agreements signed in prior years.

[6]On behalf of defendant, the agreement was signed by a representative of "Dawes Transport, Inc." Def.'s App. at 253. The court will infer that plaintiff's relationship with Dawes Transport, Inc. was the equivalent of a relationship with defendant because defendant has not raised an argument to the contrary. See, e.g., Def.'s Br. at 3 ("Throughout his relationship with Roadrunner Dawes [plaintiff] entered into a series of one year Independent Contractor Agreements.")

[7]Under the Agreement, plaintiff leased to defendant "the certain motor vehicle equipment (the "Equipment")[,i.e., his tractor trailer] . . . , together with operating personnel therefor [,i.e., plaintiff]." Def.'s App. at 242. The Agreement further provided that "[s]aid Equipment shall, during the term of this Agreement, be under [defendant]'s exclusive possession, use and control, to the extent contemplated by and required by all applicable federal and state laws and regulations relating to the operation of leased motor vehicle equipment by motor carriers." Def.'s App. at 243. Further, pursuant to the Agreement, plaintiff was not guaranteed any certain loads, any certain routes, or the ability to leave on any certain day. While the provision relating to defendant's exclusive possession, use, and control of plaintiff's tractor trailer could indicate that defendant had, in theory at least, a high degree of control over the relationship, the Agreement states that such provision "shall in no way modify, alter or affect CONTRACTOR's status as an *Independent Contractor*, and *not* an employee of CARRIER. . . . The exclusive possession, control, and use of the equipment provision of this Agreement is intended solely to comply with the requirements of 49 C.F.R. §
(continued...)

6

Plaintiff seems to argue that he should be considered an employee because defendant had the ability to influence profits and to provide directions on schedules and on performing work. His arguments are unpersuasive, however, especially given that each of the other factors supports the conclusion that he was an independent contractor. In his deposition, he testified that during 2003 to 2005, defendant would generally give him a manifest with the time that the delivery had to occur. Plaintiff states that most of the time, it would be impossible to meet the expected time of delivery and comply with U.S. Department of Transportation regulations relating to drive and rest time. Plaintiff explains that, by way of the "'required time of arrivals' . . . , defendant was indirectly requiring drivers to take the fastest most efficient routes to their interstate destinations that for plaintiff required violation of U.S. DOT regulations on rest time." Pl.'s Br. at 3.[8] Notably, plaintiff does not provide any evidence of specific examples of trips he took where defendant required him to violate any regulations. Plaintiff also argues that defendant "could even force plaintiff

---

[7](...continued)
376.12(c)(1)." Def.'s App. at 243. Such provisions are not "intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee." Federal Motor Carrier Safety Administration, DOT, Written Lease Requirements, 49 C.F.R. § 376.12(c)(4) (2007). The Agreement quotes the foregoing language, in bold and italic typeface.

[8]Insofar as plaintiff argues that defendant was requiring him to take the fastest, most efficient route, it is unclear whether this policy would influence plaintiff's profits because he represents that he "was primarily paid by the weight hauled per mile." Pl.'s Br. at 15. The fastest, most efficient route is not necessarily the shortest by mile traveled.

7

to lose revenue when he had to deadhead[9] because he was primarily paid by the weight hauled per mile." Pl.'s Br. at 15 (footnote added).

The fact that defendant would tell plaintiff what, when, and where to haul is a red herring. The <u>Broussard</u> case is instructive on this point, presenting facts similar to those in the instant action. In <u>Broussard</u>, the United States Court of Appeals for the Fifth Circuit affirmed the trial court's dismissal of Broussard's Title VII action. <u>Broussard</u>, 789 F.2d at 1161. The court held that there had been no employment relationship between the defendant and Broussard, who owned and had driven a truck for defendant.[10] On appeal, Broussard argued that she had been employed by defendant, pointing to "extensive direction of her work-what to do and when to do it." <u>Id.</u> at 1160. In response, the Fifth Circuit concluded that "[s]he misses the point: she does not really claim direction on how to operate her truck." <u>Id.</u> Insofar as plaintiff argues that he was employed by defendant because defendant directed what he would do and when he would do it, he also misses the point. The record in

---

[9]To "deadhead" is to travel with an empty trailer. On occasion, plaintiff would leave Texas with a full load of cargo that went somewhere other than Milwaukee, causing him to have to deadhead from that destination to the Milwaukee terminal, where he would pick up loads for his return trip to Texas.

[10]The court acknowledges that some of the facts in <u>Broussard</u> are distinguishable from the instant action. For example, Broussard and her husband "worked for at least a year for [defendant], it was 'off and on;' [and] they had worked for nine other companies during that time." 789 F.2d at 1160. There is no evidence that plaintiff hauled loads for anyone other than defendant during the 1999 to 2005 time period. However, the court concludes that the totality of the circumstances in this action can lead to no other conclusion but that plaintiff was an independent contractor.

8

this action establishes as a matter of law that, under the "hybrid economic realities/common law control test," plaintiff was an independent contractor, rather than employee, of defendant. Accordingly, Title VII affords him no protection, and his claims should be dismissed.

VI.

Order

For the reasons discussed above,

The court ORDERS that all claims and causes of action asserted by plaintiff in the above-captioned action be, and are hereby, dismissed with prejudice.

SIGNED April 22, 2008.

JOHN McBRYDE
United States District Judge